**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MIKE KIRKPATRICK,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant - Appellee.

No. 15-6223
(D.C. No. 5:14-CV-00349-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Mike Kirkpatrick appeals from a district court order affirming the Commissioner's

denial of disability insurance benefits (DIB) and supplemental security income (SSI).

Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Kirkpatrick has a twelfth-grade education and has worked as a tree trimmer and

lawn mower. He suffers from left-eye blindness, chronic obstructive pulmonary disease

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

(COPD), depression, and substance abuse. He has also suffered from bladder cancer, which required a surgical procedure known as a radical cystectomy with ileal conduit formation. During that procedure, surgeons removed his bladder and used a piece of his intestine to create a tube running from his kidneys to his abdominal wall. A pouch worn on his abdomen collects excreted urine.

In 2010, Kirkpatrick applied for DIB and SSI, claiming disability since 2004, when he was forty-two. Unsuccessful, he obtained a hearing before an administrative law judge (ALJ). There, he described his difficulty working: "Having . . . a pouch greatly limits any kind of work I've done before, and I'm blind in the left eye, and COPD makes it . . . where I can't really do anything very strenuous [be]cause of . . . shortness of breath." Aplt. App., Vol. I at 59. He also cited problems with arthritis and depression.

Regarding his left-eye blindness, he explained that he has little peripheral vision or depth perception. And while he is presently "clear of cancer," the pouch, which must be worn all the time, makes it hard for him to bend over or "have anything in contact . . . with [his] waist." *Id.* at 61. Nevertheless, he has been able to do "a few odd jobs," *id.* at 64, such as "sweeping[ ] and picking up[ ] . . . small items and putting them in the trash" and "[m]owing a few yards," *id.* at 65.

A vocational expert (VE) also testified at the hearing. The ALJ queried whether Kirkpatrick's past work could be performed by a hypothetical claimant (1) who could perform a wide range of light work without exposure to unprotected heights or dangerous machinery; (2) who "wear[s] a bag[ ] . . . to accommodate some physical problems" and thus can only occasionally stoop, kneel, and crouch; and (3) whose left-eye blindness

2

precludes "occupations that require peripheral vision[ ] and . . . extended reading of fine print." *Id.* at 68-69. The VE ruled out Kirkpatrick's past work, but he identified "some entry-level light work," such as a cleaner, packing-line worker, and small-products assembler, that the hypothetical claimant could perform. *Id.* at 69.

Afterward, the ALJ found Kirkpatrick not disabled. In doing so, the ALJ concluded that Kirkpatrick has the residual functional capacity (RFC)[1] to perform light work, so long as it does'nt involve "extended reading of fine print[,] . . . extended exposure to unprotected heights or dangerous machinery," or anything more than occasional stooping, kneeling, and crouching. *Id.* at 42. The ALJ noted that no treating or examining physician had placed any permanent limitations on Kirkpatrick's ability to perform basic work. Further, the ALJ observed that Kirkpatrick had, at times throughout the disability proceedings, described activities of daily living—driving a car, shopping, "help[ing] a friend around his house," *id.* at 213, doing laundry, preparing meals—"that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," *id.* at 47. The ALJ finally noted that while Kirkpatrick's RFC precluded his past relevant work, the VE had testified that other jobs existed in the national economy consistent with Kirkpatrick's RFC. The Appeals Council denied review, making the ALJ's determination the Commissioner's final decision.

---

[1] "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96–8p, 1996 WL 374184, at *3 (July 2, 1996). It "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* at *1.

Kirkpatrick challenged the denial of benefits in district court. Unsuccessful, he now appeals.

## DISCUSSION

We review the Commissioner's decision to determine whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards. But in reviewing the administrative decision, we neither reweigh the evidence nor substitute our judgment for that of the agency. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

Kirkpatrick first argues his RFC is flawed because, despite finding that his COPD is a severe impairment, the ALJ did not consider his "inability to be exposed to environmental pollutants such as fumes, cleaning fluids, dusts, odors, gases, extreme heat or cold and/or poor ventilation." Aplt. Opening Br. at 4. But Kirkpatrick doesn't identify, nor have we found, any evidence suggesting such pollutants and conditions affected his capacity to perform the physical and mental activities associated with light work. Indeed, at his disability hearing, Kirkpatrick described his COPD as precluding "strenuous" work due to "shortness of breath." Aplt. App., Vol. I at 59. The ALJ accounted for this limitation by fashioning an RFC for light work, which involves only minimally strenuous activities, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b). Because Kirkpatrick has not shown that environmental pollutants or other conditions degrade his functioning beyond that necessary for light work, we will not disturb the ALJ's RFC determination. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (stating that in assessing claimant's RFC, an ALJ isn't required to account for limitation belied by the

4

record); 20 C.F.R. § 404.1512(c) (explaining, in context of DIB, that claimant bears responsibility for identifying or submitting evidence that relates to finding of disability); *id.* § 416.912(c) (same as to SSI).

Relatedly, we reject Kirkpatrick's assertion that the hypothetical the ALJ presented to the VE failed to precisely relate limitations caused by environmental conditions. Again, the limitations he complains of aren't borne out by the record. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (holding that hypothetical question to VE need only include impairments supported by evidentiary record). Moreover, none of the jobs identified by the VE require exposure to temperature extremes, atmospheric conditions, or toxic caustic chemicals. *See Dictionary of Occupational Titles* 323.687-014, 1991 WL 672783 (4th rev. ed. 1991) (cleaner); *id.* 739.687-030, 1991 WL 680180 (small-products assembler); *id.* 753.687-038, 1991 WL 680354 (packing-line worker). Thus, the alleged limitations are not relevant.

Citing his "limited depth perception and extreme loss of peripheral vision," Kirkpatrick next complains that his RFC doesn't fully account for his visual problems. Aplt. Opening Br. at 5. But in assessing Kirkpatrick's RFC, the ALJ noted that "his peripheral [vision] and depth perception is limited." Aplt. App., Vol. I at 43. Thus, the ALJ fashioned an RFC with limited fine-print reading and limited exposure to unprotected heights and dangerous machinery. Further, the ALJ presented a hypothetical to the VE that precluded jobs that involved "exposure to unprotected heights[ ] or dangerous machinery" and that "require[d] peripheral vision[ ] and . . . extended reading of fine print." Aplt. App., Vol. I at 68-69. Kirkpatrick doesn't explain how these

5

restrictions fail to account for his depth-perception and peripheral-vision deficits. And it isn't our obligation to search the record and construct a party's arguments. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

In any event, Kirkpatrick contends that only two of the jobs identified by the VE (assembler and packing-line worker) exceed his vision limitations. *See* Aplt. Opening Br. at 8. Thus, the third job identified by the VE, the cleaner job, is not precluded by his vision limitations. *See Dictionary of Occupational Titles* 323.687-014, 1991 WL 672783 (4th rev. ed. 1991) (stating that depth perception and field of vision limitations aren't present in cleaner job). Thus, even if the ALJ failed to fully account for Kirkpatrick's depth-perception and peripheral-vision limitations, that error is harmless. *Cf. Raymond v. Astrue*, 621 F.3d 1269, 1273-74 (10th Cir. 2009) (declining to consider claimant's argument that ALJ erroneously relied on VE's testimony "that he was physically able to work as a sales attendant or an office helper" because "substantial record evidence support[ed] the ALJ's conclusion that [claimant] [could] work as a rental clerk" (internal quotation marks omitted)).

Kirkpatrick further suggests that anyone with vision in only one eye would have "difficulty with production or pace" and "see[ing] things quickly or avoid[ing] fast moving people." Aplt. Opening Br. at 5. He argues that these limitations "should have been accounted for in the ALJ's RFC" and that he "even testified to his problems in his hearing before this ALJ." *Id.* But the citation to the record he provides is not supportive. *See* Aplt. App., Vol. I at 60 (stating only, "I still don't have much peripheral or depth perception really, but I've kind [of] learned to cope as best I can"). Clearly, an ALJ

doesn't commit error by omitting limitations not supported by the record. *See Qualls*, 206 F.3d at 1372.

Additionally, Kirkpatrick takes issue with the ALJ's use of the word "extended" in his RFC assessment. *See* Aplt. App., Vol. I at 42 ("[T]he claimant has the [RFC] to perform light work[,] . . . except due to left eye blindness he is not able to perform *extended* reading of fine print . . . [and] should avoid *extended* exposure to unprotected heights or dangerous machinery." (emphasis added)). Kirkpatrick asserts that the word "extended" "is not defined in vocational terms and it is not a proper social security term." Aplt. Opening Br. at 6. He doesn't explain, however, how the ALJ's use of this term has any bearing on whether his RFC is supported by substantial evidence. We don't consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (internal quotation marks omitted).

Finally, Kirkpatrick complains that the only urinary limitation included in his RFC is that he can only "occasionally stoop, kneel, and crouch due to [the] bag he wears to capture urine." Aplt. App., Vol. I at 42. He argues that the ALJ should have assessed a more restrictive RFC, claiming that he suffers from (1) "chronic frequency dysuria and urgency" due to urothelial carcinoma; (2) "pain, urinary incontinence, constipation, or leaks inside his body" due to "the persistence of the cancer and tumors"; and (3) "continually recurring bladder cancer." Aplt. Opening Br. at 9. But as he did in the district court, Kirkpatrick misleadingly supports these claims with citations to medical records that originated *before* the removal of his bladder. As the district court noted, "it

7

is disingenuous to present" these claims as current or ongoing despite Kirpatrick's successful cystectomy, which has rendered him cancer free. Aplt. App., Vol. III at 674. Kirkpatrick also claims that his doctors "failed to repair" a urinoma (an encapsulated collection of urine) that resulted from his cystectomy. Aplt. Opening Br. at 9. Yet the record shows that his doctors "managed [the problem] conservatively," and it resolved. Aplt. App., Vol. III at 425.[2]

Kirkpatrick also argues his RFC should have accounted for his use of a urinary catheter and catheter bag. But he cites no evidence showing he actually uses a catheter or catheter bag. Indeed, the record shows that Kirkpatrick wears a urostomy pouch on the outside of his abdomen to collect urine. And significantly, in regard to the limitations posed by that pouch, Kirkpatrick testified only that it makes it difficult for him to bend over or to have items come in contact with his waist. The ALJ accounted for those difficulties by fashioning an RFC permitting only occasional stooping, kneeling, and crouching "due to [the] bag he wears to capture urine." *Id.*, Vol. I at 42. Kirkpatrick has failed to show his RFC is unsupported by substantial evidence.

---

[2] This court doesn't favorably view arguments based on misrepresentations of the record. *Qualls*, 206 F.3d at 1371. That seems particularly true where, as here, the appellant repeats on appeal certain misrepresentations made below without even recognizing the district court's (not insignificant) rejection of those misrepresentations. We caution Kirkpatrick's counsel, Miles L. Mitzner, that similar misrepresentations in future cases may result in his referral to a disciplinary panel. *See* 10th Cir. R. 46.5, 46.6.

**CONCLUSION**

The judgment of the district court is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge